IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

RONALD ANDRE GOODSON, #149540,   )
                                         )
        Petitioner,                )
                                         )
     v.                           )   Civil Action No. 1:12cv193-TMH
                                       )            (WO)
CARTER F. DAVENPORT, *et al.*,      )
                                       )
        Respondents.          )

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

**I.   INTRODUCTION**

On February 27, 2012,[1] proceeding *pro se*, Alabama inmate Ronald Andre Goodson ("Goodson") filed this petition for writ of habeas corpus under 28 U.S.C. § 2254 challenging his 2006 robbery conviction in the Houston County Circuit Court and claiming errors in proceedings on a state petition for post-conviction relief (Ala.R.Crim.P. 32) he filed in 2008. *See* Doc. Nos. 1 & 2.  On September 27, 2012, Goodson moved to amend his § 2254 petition to add claims of ineffective assistance of counsel at trial and on appeal and in the proceedings on his Rule 32 petition.  Doc. No. 15.  The respondents argue that Goodson's § 2254 petition is time-barred by the one-year federal limitation period.  *See* 28 U.S.C. § 2244(d).  Doc. Nos. 12 & 17.

---

[1] Applying the "mailbox rule," and no evidence to the contrary, the court deems the petition filed on the date Goodson says he placed it in the prison mailing system. *See Houston v. Lack*, 487 U.S. 266, 271-72 (1988); *Washington v. United States*, 243 F.3d 1299, 1301 (11th Cir. 2001).

## II.   DISCUSSION

### A.     *Actual Innocence as "Gateway" to Excuse Time Bar*

Goodson asserts he is "actually innocent" of the crime of which he was convicted, which, if proved, would trump a time-bar and act as a gateway through which he can pass to have the claims in his § 2254 petition reviewed.  *See Rozzelle v. Secretary, Florida Dept. of Corrections*, 672 F.3d 1000, 1011 (11th Cir. 2012).  Doc. No. 1 at 15; Doc. No. 2 at 4-5; Doc. No. 14 at 2.  This court will therefore determine whether Goodson has made a showing of actual innocence before addressing the respondents' contention that his petition is time-barred by the statute of limitations.  *See Wyzykowski v. Department of Corrections*, 226 F.3d 1213, 1218 (11th Cir. 2000).

The interests this court must balance in creating an exception to the statute of limitations based on actual innocence are governed by the standard in *Schlup v. Delo*, 513 U.S. 298, 327-328 (1995).  To "balance the societal interests in finality, comity, and conservation of scarce judicial resources with the individual interest in justice that arises in the extraordinary case," *Schlup*, 513 U.S. at 324, the Court has recognized a miscarriage-of-justice exception to procedural default.  "'[I]n appropriate cases,' "the Court has said, "the principles of comity and finality that inform the concepts of cause and prejudice 'must yield to the imperative of correcting a fundamentally unjust incarceration.'" *Murray v. Carrier*, 477 U.S. 478, 495 (1986) (quoting *Engle v. Isaac*, 456 U.S. 107, 135 (1982)).  In *Schlup*, the Court adopted a rule to implement this general principle.  It held that

prisoners asserting innocence as a gateway to defaulted claims must establish that, in light of new evidence, "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." 513 U.S. at 327.

"[T]he *Schlup* standard is demanding and permits review only in the 'extraordinary' case." *House v. Bell*, 547 U.S. 518, 538 (2006). "In the usual case the presumed guilt of a prisoner convicted in state court counsels against federal review of [untimely] claims." *Id.* at 537. "It is important to note in this regard that 'actual innocence' means factual innocence, not mere legal insufficiency. *See Sawyer v. Whitley*, 505 U.S. 333, 339 (1992)." *Bousley v. United States*, 523 U.S. 614, 623-24 (1998); *Doe v. Menefee*, 391 F.3d 147, 162 (2nd Cir. 2004) ("As *Schlup* makes clear, the issue before [a federal district] court is not legal innocence but factual innocence."). As the Supreme Court in *Schlup* observes:

> [A] substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare.... To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial. Because such evidence is obviously unavailable in the vast majority of cases, claims of actual innocence are rarely successful.

513 U.S. at 324.

In asserting his actual innocence, Goodson alludes to his trial counsel's failure to call an alibi witness, a friend of Goodson's, who, according to Goodson, would have testified that Goodson spent the night at her house (in a different room) on the night of the robbery and supposedly did not leave her house to commit Shell station robbery of which he was

convicted. At a hearing on Goodson's Rule 32 petition, his trial counsel testified he did not call this alibi witness at Goodson's trial because he questioned whether a jury would find her credible and because she appeared unwilling to testify. Doc. No. 12-3 at 67-68, 73-74, 89-90. Counsel stated he discussed this decision with Goodson before trial. *Id*. at 91-92.

The alibi witness also testified at the Rule 32 hearing and claimed she had been willing to testify at trial that Goodson spent the night at her house on the night of the robbery. Doc. No. 12-3 at 36-37. She stated she and Goodson slept in different rooms. *Id*. at 39. She claimed that although she "went to bed early," while Goodson was still up, Goodson could not have left the house without her knowing because the doors of the house had inside locks and she had the keys. *Id*. at 35-36.

The record reflects that Goodson was aware at the time of trial of the alibi witness he offers as evidence of his actual innocence. Therefore, the evidence is not new.[2] Nor does it appear that such evidence is highly reliable. Goodson's trial counsel testified that a principal reason for his decision not to call this witness at Goodson's trial was his concern that the jury would not find her credible. Although she was a friend of Goodson's, the

---

[2] The Eleventh Circuit has not directly decided whether evidence available at trial but simply not presented should be considered "new" under *Schlup*. *See Rozzelle v. Secretary, Florida Dept. of Corrections*, 672 F.3d 1000, 1018 n.21 (11th Cir. 2012) (declining to reach issue but discussing decisions from other circuits, some holding that evidence is not "new" under *Schlup* if it was available at trial but petitioner chose not to present it to the jury, others holding that evidence is "new" under *Schlup* so long as it was not presented at trial). In any case, even if Goodson's known-but-not-presented alibi evidence is considered "new" evidence under *Schlup*, that evidence, as discussed in this Recommendation, was neither highly reliable nor of the sort that would enable Goodson to carry his burden of demonstrating that it is more likely than not that no reasonable juror would have convicted him in light of the alleged new evidence. *See Schlup*, 513 U.S. at 327.

witness had also evidenced an unwillingness to testify, a consideration Goodson's counsel

weighed in assessing the value of presenting testimony from the witness. Thus, Goodson

presents neither new nor reliable evidence to establish his innocence. *See Schlup*, 513 U.S.

at 324.

Even had the alibi witness testified at trial to the matters alleged by Goodson, the jury

could weigh and assess the credibility of such testimony against the substantial evidence of

Goodson's guilt presented by the State. In its memorandum opinion affirming Goodson's

conviction on direct appeal, the Alabama Court of Criminal Appeals summarized the

evidence[3]:

> The State's evidence established that on July 20, 2005, Cassie Phillips
> was working in her position as cashier at the Shell station when a black male
> entered the business wearing a torn nylon stocking over his head. He was
> holding a rusty silver revolver in one and used his other hand to hold up his
> pants. He demanded that Phillips give him all of the money from the register
> and she complied.
>
> On July 23, 2005, Carol Walters was working in her position as a
> cashier at the Citgo station across the street from the Shell station when a black
> male wearing a torn nylon stocking entered the business brandishing a gun.
> He demanded that Walters give him all of the money in the register and
> Walters complied.
>
> On July 27, 2005, a CenturyTel phone mart was robbed. When the
> cashier screamed that she had just been robbed, store manager Valerie
> Thompson chased the robber in her car and obtained the license plate number
> from his vehicle. She subsequently gave the license plate number and a

---

[3] Goodson was convicted of the July 20, 2005, robbery of the Shell station. The State
introduced evidence of two other robberies that occurred in the same vicinity in the same week as
tending to prove Goodson's identity as the Shell station robber and to show his common plan or
scheme.

description of the automobile to police.

> Upon further investigation, law enforcement officers determined that the license plate number given to them by Thompson did not match the vehicle described by Thompson. The database indicated that the license plate in question was registered to a vehicle owned by Goodson. A photographic lineup was prepared and shown to Cassie Phillips. Phillips immediately identified Goodson as the man who robbed her. At trial, both Phillips and Carol Walters identified Goodson as the man who robbed them.

Doc. No. 12-4 at 1-2.

Here, the evidence presented by the State included eyewitness testimony identifying Goodson as the Shell station robber as well as eyewitness testimony linking Goodson and his car to similar robberies that occurred in the same vicinity in the same week. Goodson's trial counsel's assessment of the questionable credibility and limited worth of testimony from the alibi witness suggests that the jury as well was unlikely to find her credible. Perhaps a jury would credit Goodson's alibi witnesses, or perhaps it would not. In either event, the alibi testimony is not so ironclad in its reliability that it satisfies the criteria for actual innocence. Goodson has not carried his burden of demonstrating "that it is more likely than not that no reasonable juror would have convicted [him] in light of the [alleged] new evidence." *Schlup*, 513 U.S. at 327. Accordingly, the court concludes that Goodson is not entitled to the actual innocence exception to the habeas statute's time-bar as articulated in *Schlup*.

**B.    *One-year Limitation Period***

Title 28 U.S.C. § 2244(d) states:

> (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State

court.  The limitation period shall run from the latest of –

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).

On April 11, 2006, Houston County jury found Goodson guilty of first-degree robbery, in violation of § 13A-8-41, Ala. Code 1975.  On September 26, 2006, the trial court imposed a sentence of life without parole under Alabama's habitual offender statute. Goodson appealed, and in a memorandum opinion issued on February 23, 2007, the Alabama Court of Criminal Appeals affirmed his conviction and sentence.  Goodson filed a petition for writ of certiorari in the Alabama Supreme Court, and on July 13, 2007, that court denied certiorari review and issued a certificate of judgment.  Goodson did not petition the United

States Supreme Court for certiorari review.   Under 28 U.S.C. § 2244(d)(1)(A), then, Goodson's conviction became final – and the one-year federal limitation period began to run – on October 11, 2007, that is, 90 days after the Alabama Supreme Court issued its certificate of judgment.  *See Bond v. Moore*, 309 F.3d 770, 773-74 (11th Cir. 2002) (finding that the federal limitation period did not begin to run until expiration of the 90-day window during which the petitioner could have petitioned the United States Supreme Court for a writ of certiorari).

On July 11, 2008, Goodson filed a Rule 32, Ala. R.Crim.P., petition in the trial court challenging his conviction, an act that, under 28 U.S.C. § 2244(d)(2), tolled the federal limitation period for filing a § 2254 petition.  At that time, the one-year limitation period had run for 274 days (i.e., the time from October 11, 2007, through July 11, 2008).  The trial court originally denied Goodson's Rule 32 petition as untimely on August 12, 2008. Goodson appealed, and on June 15, 2009, the Alabama Court of Criminal Appeals remanded the case to the trial court, finding that the Rule 32 petition was not untimely.  After an evidentiary hearing on the Rule 32 petition, the trial court again denied the petition.  On March 11, 2011, on return to remand, the Alabama Court of Criminal Appeals affirmed the trial court's judgment denying Goodson's Rule 32 petition.  On April 14, 2011, Goodson filed a petition for writ of certiorari in the Alabama Supreme Court, and on August 5, 2011, that court denied certiorari review and issued a certificate of judgment in the case.

Section 2244(d)(2) provides that "[t]he time during which a properly filed application

for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this section." The proceedings on Goodson's Rule 32 petition were pending in the state courts from July 11, 2008 (when Goodson filed the Rule 32 petition), until August 5, 2011 (when the Alabama Supreme Court issued a certificate of judgment in the proceedings). On August 5, 2011, Goodson had 91 days (i.e., 365 days - 274 days) remaining within which to file a timely federal habeas petition challenging his robbery conviction and sentence. The record establishes that after the limitation period began to run again on August 5, 2011, it ran unabated before expiring 91 days later, on November 4, 2011. Goodson did not file his § 2254 petition with this court until February 27, 2012, 115 days after expiration of the limitation period. *See* 28 U.S.C. § 2244(d)(1)(A). However, as discussed below, he maintains he is entitled to equitable tolling of the limitation period.[4]

## C.    *Equitable Tolling*

Goodson argues he is entitled to equitable tolling because, he says, he did not learn of the Alabama Supreme Court's August 5, 2011, ruling denying his petition for writ of certiorari in the state Rule 32 proceedings until January 17, 2012, after he contacted the

---

[4] The statutory tolling provisions of § 2244(d)(1) (B)-(D) do not provide safe harbor for Goodson. There is no evidence that any unconstitutional or illegal State action impeded Goodson from filing a timely § 2254 petition. *See* 28 U.S.C. § 2244(d)(1)(B). Goodson also presents no claim that rests on an alleged "right [that] has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review." *See* 28 U.S.C. § 2244(d)(1)(C). Finally, Goodson submits no grounds for relief for which the factual predicate could not have been discovered at a far earlier time "through the exercise of due diligence." *See* 28 U.S.C. § 2244(d)(1)(D).

attorney who had represented him at the Rule 32 hearing. Doc. No. 1 at 15; Doc. No. 14 at 1-2. Goodson asserts that sometime after August 5, 2011, he received an envelope addressed from the Alabama Supreme Court through the prison mailing system, but the contents of the envelope had been removed. *Id.* It is unclear from Goodson's allegations when he contends he received this empty envelope from the Alabama Supreme Court, i.e., whether he received it closer in time to the Alabama Supreme Court's August 5, 2011, ruling or closer in time to his contacting his former counsel on January 17, 2012. As noted above, the one-year limitation period for Goodson to file a timely § 2254 petition expired on November 4, 2011, 91 days after the Alabama Supreme Court denied his petition for writ of certiorari and entered a certificate of judgment in the Rule 32 proceedings.

The limitation period in federal habeas proceedings "may be equitably tolled" on grounds apart from those specified in the habeas statute "when a movant untimely files because of extraordinary circumstances that are both beyond his control and unavoidable with diligence." *Sandvik v. United States*, 177 F.3d 1269, 1271 (11th Cir. 1999). The United States Supreme Court has confirmed the one-year limitation period "is subject to equitable tolling," but only when a petitioner "shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Holland v. Florida.*, 560 U.S. 631, 649 (2010). *See also Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005). "The burden of establishing entitlement to this extraordinary remedy plainly rests with the petitioner." *Drew v. Dep't of Corr.*, 297 F.3d

1278, 1286 (11th Cir. 2002).

Here, Goodson has not met the heavy burden of showing he exercised reasonable diligence to warrant equitable tolling of the limitation period.  It is not enough for Goodson to assert, as he has, that he was not notified by the Alabama Supreme Court of the denial of his petition for certiorari.  He must also demonstrate due diligence on his part to determine the status of  that petition that led to his late filing of his § 2254 petition. This he has failed to do.  Goodson's petition for writ of certiorari submitted to the Alabama Supreme Court on April 14, 2011, was a *pro se* filing.  He presents no evidence he tried to contact the court or his former attorney to keep abreast of the status of his petition for certiorari until January 17, 2011 – 278 days after he filed the petition (and 74 days after expiration of the limitation period for filing a § 2254 petition).[5]  While he also appears to say he knew of irregularities in the prison mailing system, the record includes no evidence he was diligent about requesting his mail from prison authorities after he filed his petition with the Alabama Supreme Court.  "Equitable tolling is not intended as a device to rescue those who inexcusably sleep upon their rights." *United States v. Ramos-Maritinez*, 638 F.3d 315, 323 (1st Cir. 2011).  Goodson's lack of reasonable diligence precludes equitable tolling in this case. *See Pace*, 544 U.S. at 419.

Because Goodson did not file his § 2254 petition until February 27, 2012 – 115 days after expiration of the limitation period in 28 U.S.C. § 2244(d)(1)(A), his petition is time-

---

[5] Goodson makes no claim that he received any assurances of notification from his former counsel.  All his appellate filings in his Rule 32 proceedings were *pro se*.

barred and this court may not address the merits.

### III. CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that the petition for habeas corpus relief be denied and this case be dismissed with prejudice under 28 U.S.C. § 2244(d).

It is further

ORDERED that the parties shall file any objections to the said Recommendation on or before August 19, 2014. Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which the party objects. Frivolous, conclusive, or general objections will not be considered by the District Court. The parties are advised this Recommendation is not a final order of the court; therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a de novo determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982). *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982). *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Done this 4th day of August, 2014.


/s/ Terry F. Moorer
TERRY F. MOORER
UNITED STATES MAGISTRATE JUDGE